IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES M. FISHER,

              Plaintiff,

    vs.                             Civil Action 2:07-CV-270
                                      Judge Frost
                                      Magistrate Judge King

MICHAEL J. ASTRUE, Commissioner
of Social Security,

              Defendant.


<u>REPORT AND RECOMMENDATION</u>

       This is an action instituted under the provisions of 42 U.S.C. §§405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for a period of disability and disability insurance benefits. This matter is now before the Court on plaintiff's *Statement of Errors,* the Commissioner's *Memorandum in Opposition* and plaintiff's *Reply*.

       Plaintiff James M. Fisher alleges that he has been disabled since May 1, 1999, as a result of alcoholism, a neck injury, hepatitis C, and degenerative disc disease. *A.R.* 67. His application for benefits was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

       On September 23, 2005, plaintiff, who was not at the time represented by counsel, appeared and testified at the administrative hearing, as did Frederick A. Monaco, Ph.D., who testified as a vocational expert. In a decision dated December 30, 2005, the administrative law judge found that, although plaintiff suffers severe impairments that preclude the performance of his past relevant work, he nevertheless has the residual functional capacity to perform sedentary exertion without

prolonged standing on concrete. The administrative law judge relied on the testimony of the vocational expert to find that this residual functional capacity allows plaintiff to perform work that exists in significant numbers in the national economy. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on December 14, 2006.

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite

2

conclusion. *Longworth v. Comm'r Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005).

Plaintiff was 45 years old at the time the administrative law judge issued his decision. He has a high school education and additional training as an auto mechanic. Plaintiff has prior relevant work experience, skilled and heavy, as an auto mechanic and automotive career instructor. He also has prior unskilled medium work experience as a grounds keeper. He has not engaged in substantial gainful activity since his alleged onset date of May 1, 1999. He was last insured for disability insurance benefits on December 31, 2003.

Plaintiff experienced an acute onset of neck pain, right arm pain and numbness beginning in early 1998. *A.R.* 145. Records from plaintiff's current treating family practitioner, Richard Thomas, M.D., include x-ray evidence of degenerative changes in the lower cervical spine, *A.R.* 148, and CT evidence "highly suspicious for disc herniation at C5-6 in the midline and to the right." *A.R.* 146. A nerve conduction study of the right arm was normal. *Id.* A 1998 chest x-ray was abnormal, *A.R.* 141, and ultimately resulted in a diagnosis of questionable COPD. *A.R.* 142.[1] Plaintiff was also diagnosed with hepatitis C in 1998. *A.R.* 139.

Dr. Thomas' notes reveal no office visits between June 2000 and January 2003, *A.R.* 125, when plaintiff returned with complaints of low back pain for a number of years, increasing in severity and frequency over the prior six months. Chest x-rays showed mild diffuse chronic lung changes without acute cardiopulmonary disease. *A.R.* 130. An EKG showed

---

[1]Dr. Thomas advised plaintiff to quit smoking. *A.R.* 126. Plaintiff testified at the administrative hearing, however, *A.R.* 249, that he continues to smoke.

mild abnormalities. *A.R.* 123. A post-stress test EKG was normal. *A.R.* 151. X-rays of the lumbosacral spine revealed mild arthritis in the lower levels. Dr. Thomas recommended an MRI.

A February 2003 MRI was read as suggestive of mild disc degeneration and disc bulging in the lower lumbar spine, most marked at L4-5. *A.R.* 151. Plaintiff was diagnosed with spondylosis of the lumbar spine and was referred to physical therapy in February 2003. *A.R.* 158.

In November 2003, Gabriel E. Sella, M.D., Ph.D., performed a consultative physical examination of the plaintiff at the request of the state agency. During the examination, plaintiff acknowledged a past history of alcohol abuse but indicated that he had been sober for 6 years. *A.R.* 164.[2] He was taking no medication at the time of the examination. He walked without an antalgic gait and his "ability to bear weight was within normal limits." *A.R.* 166. Plaintiff was able to toe-walk, heel-walk, squat and stand from a squatting position normally. *Id.* There was no joint abnormality, *A.R.* 169, but Dr. Sella noted mild clubbing and cyanosis of the nail beds. *Id.* Range of motion was "moderately good," *A.R.* 170, but was slightly reduced in the cervical spine. *A.R.* 174. There was no lumbosacral radiculopathy in either lower extremity. *Id.* Muscle strength was 5/5. According to Dr. Sella, plaintiff "is able to do work-related activities such as sitting, standing, walking, handling objects, hearing, speaking and traveling." *A.R.* 171. He noted no impairment in memory, concentration and persistence, *Id.,* but Dr. Sella noted minimal to moderate anxiety. *A.R.* 167.

---

[2]Plaintiff also testified at the administrative hearing that he quit drinking in 1998. *A.R.* 249.

A pulmonary function study performed in December 2003 revealed moderate obstruction.  *A.R.* 203.  Mark G. Wilson, who administered the pulmonary function study, recommended a bronchodilator test to detect reversible obstruction.  *Id.*

In November 2003, Claudia E. Johnson Brown, Ph.D., performed a consultative psychological evaluation of the plaintiff at the request of the state agency.  Plaintiff was alert and oriented and his ability to concentrate was "grossly intact."  *A.R.* 181.  Recent memory was moderately impaired, and remote memory was grossly intact.  *A.R.* 182. Plaintiff's mood was neutral and his affect was appropriate; insight and judgment were fair.  *A.R.* 183.  Plaintiff reported that he cares for himself throughout the day, walking the perimeter of his farm, and that he assists in helping his teenage children get to school, and with after school activities.  *A.R.* 184.  He hunts as a hobby and visits friends for about one hour per day.  *Id.*  According to Dr. Brown, plaintiff can understand and remember instructions, relate appropriately, and has the cognitive ability to perform simple, repetitive tasks.  *A.R.* 184.  He would be able to withstand the normal stresses of a work environment. In this regard, Dr. Brown specifically indicated that any limitation in plaintiff's ability to work would result from the physical demands of the task, rather than from plaintiff's cognitive impairments.  *Id.*  Dr. Brown diagnosed alcohol abuse in sustained full remission and indicated that plaintiff's current Global Assessment of Functioning ["GAF"] is 65.  *A.R.* 185.

According to a state agency psychologist, the record does not document a severe mental impairment.  *A.R.* 187.  Plaintiff had only a mild impairment in daily activities, in social functioning and in

maintaining concentration, persistence or pace. There were no repeated episodes of decompensation. *A.R.* 197.

In January 2004, a state agency physician reviewed the medical evidence of record and opined that plaintiff could occasionally lift and carry up to 50 pounds and frequently lift and carry up to 25 pounds. He could stand or walk for about 6 hours throughout an 8-hour workday and could sit for about 6 hours throughout an 8-hour workday. Plaintiff was unlimited in his ability to push or pull. *A.R.* 211.

In March 2004, Dr. Thomas stated that, due to plaintiff's lumbar condition, "he has been advised to seek employment that does not involve work with prolonged standing on concrete." *A.R.* 215.

Plaintiff began interferon treatment for hepatitis C in April 2004; he deferred a liver biopsy at that time.

In July 2004, plaintiff underwent evaluation for management of low back pain and paresthesia of the legs by W. Washington, M.D. *A.R.* 233. Clinical examination revealed no atrophy of the legs, normal reflexes and negative straight leg raising bilaterally. *A.R.* 233. Plaintiff was diagnosed with lumbar degenerative disc disease with disc herniation at L4-L5. Lumbar epidural and steroid injections were ineffectual. *A.R.* 237-38. Plaintiff reported that Vicodin, prescribed by his family physician, helps for three or more hours. *Id.*

In September 2005, Zev Randy Maycon, M.D., plaintiff's treating gastroenterologist, reported that treatment of plaintiff's hepatitis C "may predispose him to severe fatigue, irritability, mood swings, depression. He may also be bothered by sleep disturbance, lack of appetite, abnormalities of his blood work as well as his thyroid gland." *A.R.* 240. Dr. Maycon also prescribed an anti-depressant. At

6

the time of the administrative hearing, plaintiff was taking interferon and other medicine for hepatitis C. *A.R.* 249.

The vocational expert testified that a claimant with plaintiff's vocational profile, who experienced shortness of breath because of smoking, degenerative joint disease of the back, status post neck surgery in 1992 and back pain resulting from a herniated disc at L4-5 and spondylosis, and whose treating physician indicated that he can perform sedentary exertion without prolonged standing on concrete, could not return to plaintiff's past relevant work but could perform many hundreds of thousands of jobs in the national economy, including such jobs as document preparer and bench assembler. *A.R.* 253-54.

In his decision, the administrative law judge found that plaintiff suffers from hepatitis C, for which he has received treatment with a gastroenterologist since 2005 and that his substance abuse disorder is in full remission. There is no diagnosed mental impairment, the administrative law judge found, despite plaintiff's allegation of depression. *A.R.* 20. According to the administrative law judge, none of plaintiff's impairments meet or equal any listed impairments, whether considered singly or in combination, *A.R.* 18.

Relying on the statement of plaintiff's treating family practitioner, Dr. Thomas, and the report of the consultative evaluator, Dr. Sella, the administrative law judge found that plaintiff has the residual functional capacity to perform work at the sedentary exertional level so long as he is not exposed to prolonged standing. *A.R.* 21. Although this residual functional capacity precludes the performance of plaintiff's past relevant work, which required medium exertion or more, the administrative law judge relied on the testimony of the vocational

7

expert to conclude that plaintiff can perform jobs that exist in the national economy and is therefore not disabled.

Now represented by counsel, plaintiff contends that the administrative law judge failed to fully apprise plaintiff of his right to representation at the administrative hearing, failed to fully develop the record and demonstrated bias against plaintiff. Plaintiff also contends that the administrative law judge's residual functional capacity assessment is not supported by the evidence and that the vocational testimony, upon which the administrative law judge relied, was fatally flawed. Finally, plaintiff contends that the conclusion of the Commissioner was not based on the record as a whole and that "highly relevant evidence was just simply ignored." *Statement of Errors,* at 14.

**1. Waiver of Right to Counsel and Adequacy of the Administrative Hearing.**

An administrative law judge has the obligation to fully and fairly develop the record. *Duncan v. Secretary of Health and Human Services,* 801 F.2d 847 (6th Cir. 1986); *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048 (6th Cir. 1983). This burden is heightened when a claimant is not represented. *Lashley,* 708 F.2d at 1051. The mere fact that a claimant is not represented by an attorney, however, is not alone grounds for reversal. *Holden v. Califano,* 641 F.2d 405, 408 (6th Cir. 1981).

Plaintiff was advised, in writing and on more than one occasion, of his right to representation at the administrative hearing. *See, e.g., A.R.* 40, 52. Plaintiff understood that right. *See, e.g., A.R.* 42, 257-58.

At the outset of the hearing, the administrative law judge

8

explored plaintiff's decision to appear without counsel, and advised
plaintiff, more than once, that the hearing could be continued to allow
him to obtain an attorney.  Plaintiff initially expressed confusion as
to the effect of his appearance at the hearing without counsel: "I was
told by Barb, the secretary, or whatever, that we would go through with
the hearing and at any point we could stop."  *A.R.* 243.  The
administrative law judge immediately advised plaintiff that he was wrong
in that understanding, *id.,* and asked plaintiff, for a second time, "[D]o
you need more time to obtain representation?"  *Id.*  Plaintiff
unambiguously responded, "No." *Id.*  When plaintiff then expressed some
hesitancy, ("I guess no." *A.R.* 244), the administrative law judge
advised:

> It's up to you, sir.  If you would like to have
> more time to get representation, I would have no
> problem with giving you additional time.  In fact,
> we will give you a form, which lists possible
> sources of representation.  Also, the Allegheny
> County Bar Association does have a lawyer
> [referral] service.

*A.R.* 244.  Plaintiff then consulted with his wife, who was also present
in the hearing room:

> CLMT:     What do you think?
>
> WTN:      Up to you.  I don't know.  You have all
>           your information --
>
> CLMT:     I have --
>
> WTN:      -- here.
>
> CLMT:     -- everything.  Yeah.
>
> ALJ:      Okay. ...

*Id.*  The substance of the administrative hearing then began.

This Court rejects plaintiff's characterization of the record

9

as reflecting confusion, uncertainty and ambiguity as it relates to the plaintiff's decision to proceed at the administrative hearing without the assistance of counsel. Plaintiff has a high school education and the consultative psychological evaluation reflect no more than mild symptomatology. *A.R.* 185. Plaintiff advised the administrative law judge that he had examined his file prior to the hearing, *A.R.* 245, and, during the course of the hearing, plaintiff offered new materials, which were admitted into the record. *A.R.* 245-46. Finally, in response to the administrative law judge's offer at the end of the hearing to keep the record open to permit plaintiff to provide a statement from a treating doctor "indicating exactly what the adverse side effects of your medication are," *A.R.* 257, plaintiff did in fact procure a statement from his treating gastroenterologist. *See A.R.* 249. This Court therefore concludes that plaintiff understood his right to counsel and yet freely chose to forgo that right.

This Court has carefully scrutinized the administrative record in this action and concludes that the administrative hearing was not so inadequate as to warrant reversal and remand. Although brief, that hearing was not unusually brief in light of the relatively sparse medical evidence. Moreover, plaintiff was afforded the opportunity to make a complete record. In this regard, plaintiff suggests that the administrative law judge prevented plaintiff from developing the record: The administrative law judge "had an obligation to explain" that plaintiff's wife could testify on his behalf. *Reply,* at 2. Again, plaintiff mischaracterizes the record in this action. The notice of the administrative hearing included, not only references to the right to a representative, but also to the availability of "certain travel costs"

10

for "needed witnesses." *A.R.* 52. Moreover, during the administrative hearing, the administrative law judge expressly asked plaintiff, "Do you plan to have you[r] wife testify, sir?" *A.R.* 250, to which plaintiff responded, "No." *Id.*

Significantly, plaintiff has not suggested and this Court is unable to determine what possible additional information could have been adduced at the hearing had plaintiff been represented by counsel.

In short, and having carefully scrutinized the entire administrative record in this action, the Court concludes that the administrative law judge did not deny plaintiff a full and fair hearing.

**2. Allegations of Bias.**

Plaintiff suggests in passing that the administrative law judge was also biased against the plaintiff. *Plaintiff's Reply*, at 3. The passage of the transcript referred to by plaintiff occurred at the end of the administrative hearing, when the administrative law judge offered to keep the record open for two weeks in order to allow plaintiff to submit a statement from a treating medical provider "indicating exactly what the adverse side effects of your medications are." *A.R.* 257. The administrative law judge also commented that it was for such purposes that "people ordinarily get attorneys to represent them." *Id.* In response, plaintiff replied, "I ... had an attorney but ... it didn't work." *Id.* The administrative law judge then replied, "Ms. Carobi [phonetic] apparently does not wish to represent you. She's never signed any piece of paper that said that she's representing you. ... So and there are lots of attorneys out there. But you've decided to proceed without a representative, and you've had your hearing. I'd be happy to

11

see anything further you'd like to submit." *A.R.* 258. Although plaintiff argues that this passage reflects the administrative law judge's "distaste" for plaintiff, *Reply*, at 3, this Court's own review of the passage, particularly in its broader context, reveals no evidence that the administrative law judge acted with hostility or bias toward plaintiff or with partiality toward the Commissioner.

Plaintiff also contends that the decision of the administrative law judge demonstrates "clear bias against the plaintiff," as evidenced by "conclusions which have no basis in the record." *Reply*, at p.4. In this regard, plaintiff specifically complains of the administrative law judge's conclusion that plaintiff's pulmonary impairment is a result of smoking and would be alleviated if he abstained from smoking.

In his decision, the administrative law judge attributed plaintiff's pulmonary impairment "to smoking, and he would have no limitation if he abstained." *A.R.* 18. The administrative law judge found that plaintiff's pulmonary impairment does not meet Listing 3.02:

> The claimant and his treating and examining physicians have documented his pulmonary symptoms. He has complained of shortness of breath and has been treated satisfactorily with inhalers. I note that the record shows that the claimant was described as having COPD as a result of on-going cigarette smoking. All treating physicians have suggested that he stop smoking but the claimant has refused to stop smoking. Exhibit 8-F shows evidence of a pulmonary function test on December 30, 2003, that resulted in moderate obstructive disease. This appears to be the only diagnostic procedure to substantiate the severity of symptoms. The claimant is treated by his family practitioner but does not take prescribed medicine. He recently began using a nicotine patch. However, I find that the record does not support the severity of symptoms required for this listing. Therefore, I find that neither the frequency nor duration

requirement is met for Listing 3.02.

*A.R.* 19 (emphasis in original).  The administrative law judge also commented that plaintiff "was also asked to cease smoking to promote healing but still smokes."  *A.R.* 22.

Dr. Thomas in fact attributed plaintiff's pulmonary impairment to smoking, *A.R.* 130, and has recommended that plaintiff quit smoking. *A.R.* 126.  Moreover, Dr. Sella expressly commented that plaintiff "is not motivated to reduce or quit his smoking."  *A.R.* 169.  Although plaintiff attributes Dr. Sella's comment to "bias and a detrimental prejudice toward Plaintiff," *Plaintiff's Statement of Errors,* at 13, there is no reason to believe that Dr. Sella was biased against plaintiff or that his consultative evaluation of plaintiff reflects anything but his professional evaluation of plaintiff's medical condition.  Although it is true that Dr. Thomas' notes also include the comment that plaintiff "has tried quitting w/no success," *A.R.* 125, there is substantial support in the record for the administrative law judge's findings in connection with plaintiff's continued smoking.

In any event, the administrative law judge asked the vocational expert to assume a claimant who "does have chronic obstructive pulmonary disease due to smoking.  He refuses to abstain from smoking. He does have shortness of breath because of smoking."  *A.R.* 257.  In response, the vocational expert testified that such a claimant could nevertheless perform several hundred thousand sedentary jobs in the national economy.  *A.R.* 253-54.

In short, the Court concludes that the findings of the administrative law judge enjoy substantial support in the record and are

13

not evidence of either bias or prejudice.

**3.  Consideration of All the Evidence.**

Plaintiff complains that the administrative law judge failed to consider all the evidence in this case.  The Commissioner is not required to mention every piece of evidence in the record.  *Walker v. Secretary of Health and Human Services,* 884 F.2d 241, 245 (6th Cir. 1989).[3]  Plaintiff specifically refers to the reports of Dr. Washington, plaintiff's treating pain management specialist, and of Dr. Maycon, plaintiff's treating gastroenterologist.  Dr. Washington first saw plaintiff more than 6 months after the lapse of plaintiff's insured status.  *See, A.R.* 233.  Dr. Washington's reference to "[c]hronic, intractable low back pain with inadequate pain control," *A.R.* 238, referred to by the plaintiff, was made almost 1 year after the lapse of plaintiff's insured status.

The administrative law judge found that plaintiff suffered a severe back impairment prior to the lapse of his insured status on December 31, 2003.  In January 2003, plaintiff complained to Dr. Thomas that he had experienced increasing back pain for the prior 6 months. *A.R.* 125.  Dr. Thomas related the pain "to prolonged standing while [plaintiff] remains active.  He does pretty well.  This now interferes w/his life significantly and he would like to pursue work up." *A.R.* 125.

---

[3]Plaintiff also complains that the administrative law judge refers to Dr. Sella, the consultative evaluator, as a treating source. *Plaintiff's Statement of Errors*, at 14. It is true that the administrative law judge's decision referred at one point to "[t]he treating sources, Dr. Sella and Dr. Thomas, ..." *A.R.* 21.  The remainder of the decision, which makes clear that the administrative law judge was well aware that Dr. Sella was a consultative evaluator and not a treating physician, *see, e.g., A.R.* 22, would suggest that the initial characterization of Dr. Sella as a treating source was a mistake not material to the outcome of the plaintiff's claim.

In February 2003, plaintiff reported that, although his symptoms had worsened over the prior year, he denied leg pain, numbness, tingling and weakness. *A.R.* 160. At the time, plaintiff received no treatment for his back condition nor was he taking medication. *Id.* Dr. Grubb prescribed Vioxx and suggested physical therapy. *Id.* However, in November 2003, *i.e.,* shortly before the lapse of plaintiff's insured status, plaintiff reported to Dr. Sella that he was taking no medication. *A.R.* 164.

Although plaintiff complains that the administrative law judge failed to consider plaintiff's complaints of back pain, the administrative law judge expressly relied on the assessment of Dr. Thomas, plaintiff's treating provider, who suggested that plaintiff "seek employment that does not involve this prolonged standing on concrete." *A.R.* 215. Moreover, Dr. Thomas' recommendation was apparently based on plaintiff's own report "that he has pain in the low back on any prolonged standing on concrete."

It cannot be said that, under these circumstances, the administrative law judge's assessment of plaintiff's back condition and its consequent limitations lacks substantial support in the record.

Plaintiff also complains that the administrative law judge did not expressly consider Dr. Maycon's treatment of plaintiff's hepatitis C. Although the condition was diagnosed long before the lapse of plaintiff's insured status, plaintiff's hepatitis C remained largely asymptomatic during that time. *See, e.g., A.R.* 225, 226. Plaintiff saw Dr. Maycon in April 2004, *i.e.,* after the lapse of his insured status,

"to discuss further treatment options." *A.R.* 231.[4] There is simply no suggestion that plaintiff's hepatitis C impaired his ability to engage in work-related activities prior to the lapse of his insured status. Therefore, the administrative law judge's failure to expressly consider Dr. Maycon's treatment and report does not warrant remand.

**4. Residual Functional Capacity Assessment and Vocational Evidence.**

The administrative law judge found that plaintiff was able to perform a significant number of jobs at the sedentary level that did not require prolonged standing on concrete. This residual functional capacity is supported by the reports of both Dr. Thomas, plaintiff's treating physician, and of Dr. Sella. The administrative law judge's finding in this regard is therefore supported by substantial evidence in the record. Indeed, plaintiff does not point to greater limitation of function suggested by these reports and evaluations.

The administrative law judge may rely on the testimony of a vocational expert if the vocational testimony is based on a hypothetical question that incorporates all of the limitations accepted as credible by the administrative law judge and accurately portrays a claimant's abilities and limitations. *See Casey v. Sec'y of Health & Human Servs.,* 987 F.2 1230, 1235 (6th Cir. 1993); *Varley v. Sec's of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). Because the administrative law judge's residual functional capacity assessment is supported by substantial evidence, the hypothetical posed to the vocational expert,

---

[4] Dr. Maycon's notes indicate that he saw plaintiff for the condition initially in June 2000, although plaintiff "did not show up again for follow-up." *A.R.* 231.

16

which incorporated all of the limitations of function found by the administrative law judge, was not improper. The administrative law judge therefore could properly rely on that vocational testimony in concluding that plaintiff is not disabled.

The Court has carefully reviewed the entire record in this action and concludes that the decision of the Commissioner is supported by substantial evidence and must, therefore, be **AFFIRMED.**

It is therefore **RECOMMENDED** that this action be **DISMISSED.**

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within ten (10) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within ten (10) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

July 24, 2008                      _s/Norah McCann King_
                                   Norah M<sup>c</sup>Cann King
                             United States Magistrate Judge